******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# JOSE ESTELA *v.* BRISTOL HOSPITAL, INC.
## (AC 38813)

Lavine, Keller and Harper, Js.

*Syllabus*

The plaintiff physician brought an action against the defendant hospital, claiming that the defendant improperly had restricted his hospital privileges and engaged in anticompetitive behavior by stealing his patients. The trial court rendered a judgment of nonsuit as a result of the plaintiff's failure to comply with certain discovery orders and thereafter denied the plaintiff's motion to open the judgment. The trial court determined that the plaintiff had failed to satisfy the statutory (§ 52-212 [a]) requirement for opening a judgment of nonsuit because he did not demonstrate that he was prevented from prosecuting the matter as a result of mistake, accident or other reasonable cause. Thereafter, the plaintiff commenced the present action pursuant to the accidental failure of suit statute (§ 52-592 [a]), alleging that his noncompliance with the trial court's discovery orders in his first action was the result of mistake, inadvertence or excusable neglect. The defendant filed a motion to bifurcate the proceedings in order to adjudicate the plaintiff's claim that his action was not time barred due to the applicability of § 52-592 (a) separately from the merits of his underlying causes of action. The trial court thereafter rendered judgment for the defendant, concluding that the plaintiff's action could not be maintained under § 52-592 (a) because his original action had been terminated for serious disciplinary reasons related to his noncompliance with discovery orders, and not because of mistake, inadvertence or excusable neglect. On appeal to this court, the plaintiff claimed, inter alia, that the trial court improperly found that his alleged noncompliance with discovery orders did not occur in circumstances such as mistake, inadvertence or excusable neglect, and that the court improperly applied the statutory (§ 52-212) standard for opening a judgment of nonsuit in determining whether § 52-592 (a) applied. *Held*:

1. The trial court did not abuse its discretion in determining the applicability of § 52-592 (a) apart from the issues being tried on the merits in the interests of judicial efficiency, as the issue of that statute's applicability was dispositive because the plaintiff's claims would have been time barred under the applicable statutes of limitations if § 52-592 (a) did not apply, and it having been proper for the court to address the applicability of § 52-592 (a) through a motion to bifurcate, the defendant did not waive its right to challenge that statute's applicability by failing to previously raise the statute of limitations as a special defense.

2. Contrary to the plaintiff's claim, the trial court applied the correct standard in determining the applicability of § 52-592 (a) to the present action; although it was necessary for the trial court in the present case to consider the trial court's analysis in the plaintiff's first action under § 52-212, the trial court in the present case applied the correct standard in determining that the viability of the present action could not be based on § 52-592 (a) because the first action had been terminated for serious disciplinary reasons rather than because of mistake, accident or other reasonable cause within the meaning of § 52-212.

3. The trial court's findings as to the plaintiff's conduct that led to the judgment of nonsuit in the plaintiff's first action were not clearly erroneous, as the record supported the court's finding that the first action was dismissed for serious disciplinary reasons and not because of mistake, inadvertence or excusable neglect, and, contrary to the plaintiff's claims, the court considered his justifications for his noncompliance with discovery orders and did not overlook that disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a).

4. The plaintiff could not prevail on his unpreserved claim that § 52-592 (a) applies to any judgment of nonsuit, as this court was not bound to consider claims of law that were not properly raised at trial, and, even if the plaintiff's claim had been properly preserved, it contradicted precedent.

Argued September 18, 2017—officially released January 9, 2018

Action to recover damages for, inter alia, alleged tortious interference with business expectancies, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Young, J.*, following a hearing, issued a certain order as to the defendant's motion to bifurcate; thereafter, the court granted the plaintiff's motion for judgment and rendered judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Joseph B. Burns*, with whom, on the brief, was *Pamela A. LeBlanc*, for the appellant (plaintiff).

*Holly L. Cini*, with whom were *Sara R. Simeonidis* and, on the brief, *Jillian R. Orticelli*, for the appellee (defendant).

*Opinion*

HARPER, J. This appeal is the latest installment in a long and protracted litigation between the parties. The plaintiff, Jose Estela, a physician, appeals from the trial court's judgment that his case could not be maintained under the accidental failure of suit statute, General Statutes § 52-592 (a),[1] because his first action against the defendant, Bristol Hospital, Inc., was dismissed for "serious disciplinary reasons" and not as a matter of form. On appeal, the plaintiff claims that (1) the defendant waived the right to challenge the applicability of § 52-592 (a); (2) the court incorporated a different and higher standard into its decision and thus deprived him of his rights under *Ruddock* v. *Burrowes*, 243 Conn. 569, 706 A.2d 967 (1998), by limiting the § 52-592 (a) hearing to the standard set forth in General Statutes § 52-212; (3) his alleged discovery noncompliance occurred in circumstances such as mistake, inadvertence, or excusable neglect; and (4) § 52-592 (a) applies to any judgment of nonsuit.[2] We disagree and, accordingly, affirm the judgment of the trial court.

The relevant procedural history is as follows. Prior to commencing the present action, the plaintiff commenced his first action, *Estela* v. *Bristol Hospital, Inc.*, Superior Court, judicial district of New Britain, Docket No. CV-11-6013260-S (*Estela I*), on November 3, 2011, alleging that the defendant improperly had restricted his hospital privileges and engaged in anticompetitive behavior by stealing his patients. The complaint set forth causes of action for tortious interference with business expectancies, breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with contractual relations, and defamation. As the court in the present action, *Young, J.*, noted, *Estela I* "was heavily litigated, with well over 100 filings before it was ultimately terminated by the court, *Swienton, J.*, [on October 28, 2013] for the plaintiff's failure to comply with the court's deadlines [set forth in two court orders]."

On November 1, 2013, the plaintiff filed a motion for reargument or reconsideration of the entry of nonsuit, which the court in *Estela I* denied on November 18, 2013. The plaintiff then filed a motion to open the nonsuit on November 27, 2013, which the court denied on December 16, 2013. On January 7, 2014, the plaintiff filed a motion for reconsideration or reargument of the denial of the motion to open, which the court denied on January 21, 2014.

On February 10, 2014, the plaintiff appealed from the judgment denying his motion for reconsideration of the denial of the motion to open. This court dismissed the appeal as moot because the plaintiff did not "challenge the court's finding that he failed to show that he was prevented from prosecuting his action because of mis-

take, accident, or other reasonable cause"; *Estela* v. *Bristol Hospital, Inc.*, 165 Conn. App. 100, 107, 138 A.3d 1042, cert. denied, 323 Conn. 904, 150 A.3d 681 (2016); which prevented this court from affording him practical relief, even if the plaintiff's claims were resolved in his favor. Id., 108.

Prior to the resolution of the plaintiff's appeal from the judgment rendered in *Estela I*, on October 24, 2014, the plaintiff commenced the present action, which was essentially identical to *Estela I*, relying on § 52-592 (a), in avoidance of any claim that his causes of action would be time barred by the applicable statutes of limitations.[3] On December 16, 2014, the defendant filed a motion for summary judgment. In its memorandum of law in support of the motion for summary judgment, the defendant argued, in relevant part, that the applicable statutes of limitations barred the plaintiff's claims and assumed that the plaintiff was relying on the savings provisions of § 52-592 (a), though the defendant did not explicitly challenge the applicability of the statute.

On February 26, 2015, prior to the plaintiff's filing an objection to the motion for summary judgment or action by the court, the defendant filed a motion for an order to bifurcate the trial, pursuant to General Statutes § 52-205[4] and Practice Book § 15-1,[5] to try the plaintiff's claim that his action was not time barred due to § 52-592 (a) separately from the merits of the underlying tort and breach of contract claims. On March 12, 2015, the plaintiff filed an objection to the defendant's motion for an order to bifurcate on the grounds that on multiple occasions the defendant had waived its right to challenge the applicability of § 52-592 (a) and was estopped from doing so by way of a motion to bifurcate. No immediate action was taken on the defendant's motion to bifurcate or the plaintiff's objection.

On June 23, 2015, the court overruled the plaintiff's objection to the defendant's motion for an order to bifurcate and scheduled an evidentiary hearing on the issue of whether § 52-592 (a) applies to the plaintiff's case. The evidentiary hearing took place on August 3, 2015. At the court's request, the parties filed posthearing briefs on August 10, 2015. On August 17, 2015, the court determined that, under the applicable analysis set forth in *Ruddock* v. *Burrowes*, supra, 243 Conn. 569, § 52-592 (a) did not apply to the plaintiff's case because "*Estela I* was not dismissed as a matter of form . . . ." The court found that "[because *Estela I*] was terminated for serious disciplinary reasons and not because of mistake, inadvertence or excusable neglect . . . the viability of this action cannot be based upon . . . [§ 52-592 (a)]." This appeal followed.[6] Additional facts and procedural history will be set forth as necessary.

I

We first address the plaintiff's claim that the defen-

dant waived its right to challenge the applicability of § 52-592 (a) by failing to raise the statute of limitations as a special defense, in a motion to dismiss, or in its motion for summary judgment. The plaintiff further claims that a motion to bifurcate was the improper vehicle to challenge the applicability of § 52-592 (a). We disagree.

Absent § 52-592 (a), the causes of action set forth in the plaintiff's complaint in the present case were time barred by the applicable statutes of limitations in General Statutes §§ 52-577[7] and 52-597, which the defendant asserted, contrary to the plaintiff's claim, in its December 16, 2014 memorandum of law in support of its motion for summary judgment.[8] "Section 52-592 (a) allows a plaintiff to commence a new action for the same cause, within one year, if the original action failed to be tried on its merits . . . for any matter of form . . . . Deemed a saving statute, § 52-592 enables plaintiffs to bring anew causes of action despite the expiration of the applicable statute of limitations." (Internal quotation marks omitted.) *Vestuti* v. *Miller*, 124 Conn. App. 138, 143, 3 A.3d 1046 (2010).

"Pursuant to . . . § 52-205 and Practice Book § 15-1, the trial court may order that one or more issues that are joined be tried before the others. The interests served by bifurcated trials are convenience, negation of prejudice and judicial efficiency. . . . Bifurcation may be appropriate in cases in which litigation of one issue may obviate the need to litigate another issue. . . . The bifurcation of trial proceedings lies solely within the discretion of the trial court." (Footnotes omitted; internal quotation marks omitted.) *Dumas* v. *Mena*, 82 Conn. App. 61, 64, 842 A.2d 618 (2004). Because "[b]ifurcation of trial proceedings lies solely within the discretion of the trial court . . . appellate review is limited to a determination of whether that discretion has been abused." (Citations omitted; internal quotation marks omitted.) *O'Shea* v. *Mignone*, 50 Conn. App. 577, 582, 719 A.2d 1176, cert. denied, 247 Conn. 941, 723 A.2d 319 (1998). "In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) Id., 583. "[T]he ultimate issue is whether the court could reasonably conclude as it did . . . ." (Internal quotation marks omitted.) *Saczynski* v. *Saczynski*, 109 Conn. App. 426, 428, 951 A.2d 670 (2008).

Our precedent demonstrates that the question of whether § 52-592 (a) applies may be addressed through a motion for an order to bifurcate. In *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 40–41, 12 A.3d 885 (2011),[9] the applicability of § 52-592 (a) initially was challenged in a motion to dismiss and a motion for summary judgment, both of which were denied by the trial court. Thereafter, "[f]ollowing discovery and

numerous revisions to the operative complaint, the trial court . . . granted the hospital defendants' motion pursuant to General Statutes § 52-206 and Practice Book § 15-1 to bifurcate the proceedings, and to try the claim that the action was saved by § 52-592 (a) separately from the malpractice claims." Id., 41. On appeal, the Supreme Court upheld the court's determination that § 52-592 (a) did not save the plaintiff's action. Id., 39.

Similarly here, the defendant's first response to the plaintiff's complaint was to file a motion for summary judgment, in which it argued that the applicable statutes of limitations barred the plaintiff's claims.[10] The court never rendered a decision on the defendant's motion for summary judgment because the defendant filed a motion for an order to bifurcate the trial to determine whether § 52-592 (a) saved the plaintiff's case. The court determined that the question of whether § 52-592 (a) applied was a dispositive issue. Thus, in the present case, as in *Plante*, the court ultimately addressed the issue of the applicability of § 52-592 (a) through a motion to bifurcate.

The plaintiff also argues that the court was wrong to "recast" the defendant's motion for an order to bifurcate as a dispositive motion. We disagree.

It was within the court's discretion to bifurcate the proceedings and address the issue of the applicability of § 52-592 (a) apart from the issues being tried on the merits in the interests of judicial efficiency. See *Dumas* v. *Mena*, supra, 82 Conn. App. 64; see also *Reichhold Chemicals, Inc.* v. *Hartford Accident & Indemnity Co.*, 243 Conn. 401, 423–24, 703 A.2d 1132 (1997). In its memorandum of decision, the court noted that "[t]o allow this action to proceed through the same extensive litigation [as *Estela I*] only to have the court determine thereafter that it cannot be saved by [§ 52-592 (a)] would be a waste of the time and resources of the parties and the court. . . . The issue before the court at this time is whether the action may be saved by [§ 52-592 (a)]." Given that the plaintiff's claim would be time barred if § 52-592 (a) did not apply; see *Vestuti* v. *Miller*, supra, 124 Conn. App. 143 ("§ 52-592 enables plaintiffs to bring anew causes of action despite the expiration of the applicable statute of limitations . . . [but] to fall within the purview of § 52-592 . . . the original lawsuit must have failed for one of the reasons enumerated in the statute" [internal quotation marks omitted]); the court did not abuse its discretion in determining the applicability of § 52-592 (a) apart from the issues being tried on the merits.

II

We next address the plaintiff's claim that the court incorporated a different and higher standard into its decision than the standard set forth in *Ruddock* v. *Bur-*

*rowes*, supra, 243 Conn. 569. Specifically, the plaintiff asserts that he was deprived of his rights under *Ruddock* because "[r]ather than employing the 'mistake, inadvertence or excusable neglect' standard under § 52-592 (a) . . . and requiring a determination as to whether the nonsuited party engaged in 'egregious conduct,' the court limited the issue to one of 'mistake, [accident] or reasonable cause' under a standard utilized under . . . § 52-212." We disagree.

This court has opined that "§§ 52-592 and 52-212 have different purposes and, thus, employ different legal standards." *Skinner* v. *Doelger*, 99 Conn. App. 540, 559, 915 A.2d 314, cert. denied, 282 Conn. 902, 919 A.2d 1037 (2007). To open a nonsuit pursuant to § 52-212 (a),[11] a plaintiff must demonstrate that it was prevented from prosecuting its action by "mistake, accident or other reasonable cause . . . ." General Statutes § 52-212 (a). In contrast, the "matter of form" provision of § 52-592 (a), as set forth in *Ruddock*, requires a plaintiff to demonstrate that the prior suit failed "in circumstances such as mistake, inadvertence or excusable neglect." *Ruddock* v. *Burrowes*, supra, 243 Conn. 577. "[T]he question of whether the court properly applied § 52-592 presents an issue of law over which our review is plenary." *Tellar* v. *Abbott Laboratories, Inc.*, 114 Conn. App. 244, 249, 969 A.2d 210 (2009). "Under the plenary standard of review, we must decide whether the court's conclusions are legally and logically correct and supported by the facts in the record." *Commissioner of Public Health* v. *Colandrea*, 175 Conn. App. 254, 259–60, 167 A.3d 471, cert. denied, 327 Conn. 957,      A.3d     (2017).

The plaintiff argues that the court improperly limited the August 3, 2015 evidentiary hearing on the applicability of § 52-592 to the "different and higher legal standard" set forth in § 52-212. In response, the defendant asserts that the court employed the correct standard and that the plaintiff "improperly conflates [the court's] discussion of the nonsuit in *Estela I* . . . ." (Citations omitted.) The defendant further argues that the court's memorandum of decision belies any argument that the court applied the wrong standard. We agree with the defendant.

To the extent that the plaintiff's argument rests on the standard quoted by the court during the August 3, 2015 evidentiary hearing, we note that our review of the hearing transcript reveals that the plaintiff did not object to the court's recitation of the § 52-212 standard, but instead, the plaintiff actually agreed[12] with the court that it was reciting the correct standard.[13] Additionally, although the court quoted the standard for § 52-212 at the evidentiary hearing, we cannot conclude that it did so in error. As the defendant asserts, in determining whether § 52-592 (a) applied, it was necessary for the court in the present case to consider the court's reasons

in *Estela I* for entering the nonsuit, including its analysis under § 52-212. During the August 3, 2015 evidentiary hearing, the court told counsel: "I need to know what the deficiencies were that form the basis of [the] ruling [by the court in *Estela I*] on the motion for nonsuit." As this court noted in *Skinner* v. *Doelger*, supra, 99 Conn. App. 540, "§§ 52-592 and 52-212 have different purposes and, thus, employ different legal standards. There is a difference, however, between relying on the legal conclusions reached in an action and applying the legal standard that was employed in that action. . . . Indeed, *we wonder how a court could determine why an earlier lawsuit failed without relying on the factual findings and legal conclusions drawn in that other action.*" (Emphasis added.) Id., 559.

More importantly, in its memorandum of decision, the court applied the correct standard under *Ruddock*, and not the standard under § 52-212—demonstrating that it rendered a decision applying the correct standard. See *Disciplinary Counsel* v. *Parnoff*, 158 Conn. App. 454, 467, 119 A.3d 621 (2015) (rejecting plaintiff's claim that court applied incorrect standard because, inter alia, "the language used by the court in its memorandum of decision indicates that the court was aware of and correctly applied the [proper] standard"), aff'd, 324 Conn. 505, 152 A.3d 1222 (2016). In its memorandum of decision, the court set forth its factual basis before concluding: "For the reasons articulated above . . . [*Estela I*] was terminated for serious disciplinary reasons and not because of *mistake, inadvertence or excusable neglect*. Therefore, the viability of this action cannot be based upon . . . § 52-592." (Emphasis added.) Accordingly, we reject the plaintiff's claim that the court incorporated a "different and higher" standard than that under *Ruddock* in rendering its decision on the applicability of § 52-592 (a) to his case.[14]

### III

We next address the plaintiff's claim that the court erred in finding that his alleged discovery noncompliance did not occur in circumstances such as mistake, inadvertence, or excusable neglect. The plaintiff argues that the court overlooked that disciplinary dismissals are not categorically excluded from the relief afforded by § 52-592 (a), and that the court did not consider his justifications for the alleged discovery noncompliance. The plaintiff further argues that the court's findings as to his conduct that led to the judgment of nonsuit are in clear error. We disagree.

The following additional facts and procedural history are relevant to this claim. As summarized in the court's memorandum of decision: "On August 3, 2015, the court conducted an evidentiary hearing solely on the applicability of § 52-592 [and] the circumstances which led to the court's granting of the motion for judgment of nonsuit and denial of the motion to open nonsuit in *Estela*

*I*. Based upon the nature and conduct of the plaintiff that led to the granting of the motion for judgment of nonsuit, the court determines that *Estela I* was not dismissed as a matter of form, but rather for serious disciplinary reasons. Therefore, the present action . . . cannot be maintained under § 52-592. The court sets forth its factual basis below.

"In *Estela I*, the defendant served a disclosure request upon the plaintiff on May 30, 2012. On September 12, 2012, the plaintiff provided some responses and asserted untimely objections. On September 18, 2012, the defendant filed a motion to compel complete responses. The plaintiff filed an objection to the motion to compel, essentially asserting that he was a 'busy practicing physician'; that the defendant provided no guidance as to how to comply; that some of the information requested was privileged or unavailable; and that he had provided substantial compliance. . . .

"On January 28, 2013, after [a] hearing, [the court] ordered the plaintiff to provide revised disclosure responses [by February 8, 2013]. The court further ordered the parties to return on February 25, 2013 'in order to advise the court whether the defendant is seeking further discovery.' On that date, again after [a] hearing, the court gave the plaintiff until March 29, 2013, to provide additional compliance with the discovery request. The primary compliance was to consist of tax returns and the report of the plaintiff's expert witness. As the plaintiff failed to comply with the court's order, the court entered a judgment of dismissal on October 28, 2013.

"At the evidentiary hearing in [the present case], the sole witness was the plaintiff's counsel, Mary Alice Moore Leonhardt, [who] testified at length about discussions between the plaintiff's counsel and [the defendant's] counsel in *Estela I* concerning outstanding discovery issues. Much of these discussions centered on information which the plaintiff requested from the defendant in order to finalize a report of the plaintiff's expert. Attorney Leonhardt essentially claimed that the defendant's attorney led her down the primrose path by promising information which was never actually produced. Attorney Leonhardt assert[ed] that her reliance on the representations of [the defendant's] counsel caused her to be dilatory in complying with the court's order. . . .

"As to the tax returns, Attorney Leonhardt testified that the plaintiff did not possess copies of the returns and was at the mercy of the Internal Revenue Service in order to comply with the court's order. She did not explain why the plaintiff failed to comply with the court's order to timely provide tax returns. At the very least, [the] plaintiff could have provided [the defendant's] counsel an authorization to obtain the returns directly from the Internal Revenue Service.

"Attorney Leonhardt's assertions do not address the fact that the [court in *Estela I*] had serially ordered the plaintiff's compliance by February 29, 2013, and March 29, 2013. As of September 27, 2013, the plaintiff still had not complied, nor had he complied a month later when [the court in *Estela I*] granted the motion for nonsuit and entered judgment." (Footnote omitted.)

On the basis of these facts, the court in the present case determined that "[t]he testimony of Attorney Leonhardt and the evidence presented fail[ed] to establish that the judgment was entered as a matter of form. Rather, it is clear that the judgment entered in *Estela I* was a disciplinary judgment. . . . The court in *Estela I* conducted several hearings and issued several orders commanding the plaintiff's compliance with discovery. Despite this, the plaintiff repeatedly ignored the court's orders, thereafter never filed anything to inform the court [that he] could not comply and never filed any motion for extension of time. After almost six months of noncompliance, the court entered a disciplinary dismissal of the action.[15] This court cannot find that the plaintiff's counsel's failure to comply with the orders of Judge Swienton in *Estela I* was excused, excusable or accidental. . . . *Estela I* was terminated for serious disciplinary reasons and not because of mistake, inadvertence or excusable neglect. Therefore, the viability of this action cannot be based upon . . . § 52-592." (Footnote added.)

"Disciplinary dismissals do not, in all cases, demonstrate the occurrence of misconduct so egregious as to bar recourse to § 52-592. . . . Whether the statute applies cannot be decided in a factual vacuum. To enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was 'a matter of form' in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect." (Citation omitted; footnote omitted.) *Ruddock* v. *Burrowes*, supra, 243 Conn. 576–77. Thus, "it is appropriate to consider each case along a continuum; at one extreme are dismissals for mistake or inadvertence, at the other extreme are dismissals for serious misconduct or a series of cumulative transgressions." (Internal quotation marks omitted.) *Tellar* v. *Abbott Laboratories, Inc.*, supra, 114 Conn. App. 251.

"On the one hand, in a long line of cases, we have held that § 52-592 (a) is remedial in nature and, therefore, warrants a broad construction. . . . On the other hand, our decisions also have underscored the importance of trial court caseflow management of crowded dockets. Caseflow management is based upon the premise that it is the responsibility of the court to establish standards for the processing of cases and also, when necessary,

to enforce compliance with such standards. Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system. . . . In the event of noncompliance with a court order, the directives of caseflow management authorize trial courts, in appropriate circumstances, to take action against either the errant attorney or the litigant who freely chose the attorney." (Citations omitted; internal quotation marks omitted.) *Ruddock* v. *Burrowes*, supra, 243 Conn. 575.

"A determination of the applicability of § 52-592 depends on the particular nature of the conduct involved." *Stevenson* v. *Peerless Industries, Inc.*, 72 Conn. App. 601, 607, 806 A.2d 567 (2002). This requires the court to make factual findings, and "[a] finding of fact will not be disturbed unless it is clearly erroneous. . . ." Id., 606. "[T]he question of whether the court properly applied § 52-592 presents an issue of law over which our review is plenary." *Tellar* v. *Abbott Laboratories, Inc.*, supra, 114 Conn. App. 249.

As an initial matter, we reject the plaintiff's argument that "[t]he court was . . . wrong to not consider the plaintiff's justifications for his alleged discovery non-compliance . . . ." Both the court's memorandum of decision, which is quoted previously, and our review of the hearing transcript reveal that the court considered at length the plaintiff's justifications for his non-compliance. We also reject the plaintiff's argument that "[t]he court overlooked in its decision that disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a)." (Internal quotation marks omitted.) The court analyzed the case under the "matter of form" analysis set forth in *Ruddock* precisely because it recognized that disciplinary dismissals are not categorically excluded from relief under § 52-592 (a). Applying that standard, which is applicable to disciplinary dismissals, the court found that "[b]ased upon the nature and conduct of the plaintiff that led to the granting of the motion for judgment of nonsuit . . . *Estela I* was not dismissed as a matter of form, but rather for serious disciplinary reasons."

The plaintiff argues that the court's factual findings in the present case are in "clear error." In response, the defendant argues that "[e]ach of these challenged factual findings is amply supported in the record and, thus, there is no basis to conclude that the . . . factual findings were clearly erroneous." We agree with the defendant.

The record readily supports the court's factual findings underlying its determination that the dismissal of *Estela I* did not occur in circumstances such as "mistake, inadvertence or excusable neglect." In *Estela I*, the plaintiff engaged in a pattern of delayed conduct by responding late to discovery requests, filing untimely objections, and filing notices of compliance after the

filing of the defendant's motion for a judgment of non-suit. The plaintiff failed to comply with two court orders, which ordered him to comply with outstanding discovery requests for his 2002–2004 tax returns and his expert report, by February 29, 2013, and March 29, 2013, respectively.

As justification for his noncompliance, the plaintiff represented to the court that he could not comply with the defendant's request to provide the expert report absent information from the defendant that had not yet been provided. As the court noted, however, the plaintiff failed to explain why he did not file a motion for extension of time in *Estela I* while waiting for this purportedly essential information from the defendant. The plaintiff also asserted that he could not comply with the discovery request for his 2002–2004 tax returns because he did not have copies, and he was waiting on copies to be provided by the Internal Revenue Service. The request for the tax returns, however, was not sent to the Internal Revenue Service until November 5, 2013— several days after the court in *Estela I* rendered the judgment of nonsuit on October 28, 2013, and months after the court-ordered deadlines to comply. Further, as the court noted, the plaintiff could have provided the defendant with an authorization to contact the Internal Revenue Service itself, but failed to do so. Moreover, the plaintiff even admitted in his motion to open the judgment of nonsuit in *Estela I* that he "*purposefully held off* on continuing his review and analysis of his own documents to cull out relevant information because he expected that the request[ed] patient information would be produced by the defendant"[16] (emphasis added; internal quotation marks omitted);—further undercutting any argument that the nonsuit resulted from "mistake, inadvertence or excusable neglect."

Also as justification for his conduct in *Estela I*, the plaintiff argued that he complied with the "reasonable meaning" of the court's orders. Specifically, the plaintiff represented to the court in the present case that the parties had come to an agreement amongst themselves to extend the deadline for compliance.[17] "In Connecti-cut, [however] the general rule is that a court order must be followed until it has been modified or successfully challenged. . . . Our Supreme Court repeatedly has advised parties against engaging in self-help and has stressed that an order of the court must be obeyed until it has been modified or successfully challenged." (Internal quotation marks omitted.) *Worth* v. *Commissioner of Transportation*, 135 Conn. App. 506, 520–21, 523, 43 A.3d 199 (rejecting plaintiff's claim that failure to comply with court order was "excusable neglect" and affirming trial court's finding that plaintiff's case was not saved by § 52-592), cert. denied, 305 Conn. 919, 47 A.3d 389 (2012). Thus, even if the parties had come to an agreement between themselves to extend the dis-covery deadline, the plaintiff needed to first inform

the court of the agreement and have the court orders modified. The plaintiff failed to do so.

On the basis of the foregoing, we cannot say that the factual findings of the court in the present case, which led it to conclude that the nonsuit in *Estela I* did not occur in circumstances such as "mistake, inadvertence or excusable neglect," were clearly erroneous. See *Ruddock* v. *Burrowes*, supra, 243 Conn. 572. Our decision is consistent with cases applying § 52-592 (a). The present case is distinguishable from those cases where the court determined that the prior case was dismissed as a matter of form, i.e., in circumstances such as "mistake, inadvertence or excusable neglect." See, e.g., *Tellar* v. *Abbott Laboratories, Inc.*, supra, 114 Conn. App. 252 (holding § 52-592 saved plaintiff's case where "[t]he conduct . . . was neither repeated nor protracted . . . [but] consisted of a singular failure to comply with a discovery request over the course of four months"); *Stevenson* v. *Peerless Industries, Inc.*, supra, 72 Conn. App. 607–608 (stating "court improperly determined that the plaintiff could not avail himself of § 52-592 [a]" where failure to respond timely to request to revise and discovery demands was due to miscommunication between plaintiff and his counsel). Rather, the plaintiff's behavior is more akin to those cases where the court found that § 52-592 (a) did not apply because the plaintiff's conduct was repeated or purposeful, and was not the result of "mistake, inadvertence or excusable neglect." See, e.g., *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 57 (concluding § 52-592 [a] did not apply, and describing plaintiff's failure to provide an opinion letter pursuant to General Statutes § 52-190a [a] as "blatant and egregious" where "[e]ven a cursory reading of § 52-190a would have revealed . . . [that the nurse writing the letter] did not qualify as a similar health care provider" [internal quotation marks omitted]); *Gillum* v. *Yale University*, 62 Conn. App. 775, 783, 773 A.2d 986 (concluding § 52-592 [a] did not apply, and describing conduct in the first case as "lackadaisical behavior by the plaintiffs at every turn" [internal quotation marks omitted]), cert. denied, 256 Conn. 929, 776 A.2d 1146 (2001).

In summary, although we recognize "that § 52-592 (a) is remedial in nature and, therefore, warrants a broad construction," our Supreme Court also has held that "[o]ur judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system." (Internal quotation marks omitted.) *Ruddock* v. *Burrowes*, supra, 243 Conn. 575. This court has recognized that there is "a critical distinction between categories of cases involving, for instance, [n]onappearances that interfere with proper judicial management of cases, and cause serious inconvenience to the court and to opposing parties . . . and those involving things such as a mere failure to respond to a notice of dormancy . . . ." (Citation omitted; internal

quotation marks omitted.) *Skinner* v. *Doelger*, supra, 99 Conn. App. 557–58. Along the continuum, where "at one extreme are dismissals for mistake or inadvertence, [and] at the other extreme are dismissals for serious misconduct or a series of cumulative transgressions"; (internal quotation marks omitted) *Tellar* v. *Abbott Laboratories, Inc.*, supra, 114 Conn. App. 251; the record supports the court's finding that *Estela I* was dismissed for "serious disciplinary reasons,"[18] and not because of "mistake, inadvertence or excusable neglect." Therefore, the findings of the court in the present case as to the plaintiff's conduct that led to the judgment of nonsuit in *Estela I* are not clearly erroneous.

IV

Finally, the plaintiff asserts for the first time on appeal that § 52-592 (a) applies to *any* judgment of nonsuit. Specifically, as an alternative to the claim addressed in part II of this opinion, the plaintiff argues that the standard set forth in *Ruddock* does not apply to judgments of nonsuit, under the plain language of the statute. Before the court in the present case, however, the plaintiff argued that the standard set forth in *Ruddock* applied, and no party objected to its application. Further, the plaintiff argues at length in his principal brief on appeal that the court employed the wrong standard in determining whether § 52-592 applied to his case by *not* using the *Ruddock* analysis.

It is well established that "[w]e are not bound to consider claims of law not properly raised at trial." *State* v. *Hilton*, 45 Conn. App. 207, 222, 694 A.2d 830, cert. denied, 243 Conn. 925, 701 A.2d 659 (1997), cert. denied, 522 U.S. 1134, 118 S. Ct. 1091, 140 L. Ed. 2d 147 (1998). Further, even if we were to find that the plaintiff's claim was properly preserved, it contradicts precedent. See *Lacasse* v. *Burns*, 214 Conn. 464, 473, 572 A.2d 357 (1990) ("[section] 52-592 does not authorize the reinitiation of all actions not tried on . . . [their] merits" [internal quotation marks omitted]); see also *Vestuti* v. *Miller*, supra, 124 Conn. App. 145 (applying standard set forth in *Ruddock* to judgment of nonsuit); *Stevenson* v. *Peerless Industries, Inc.*, supra, 72 Conn. App. 603–607 (same).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

[2] To the extent that any issues are nonreviewable, the plaintiff invokes

the plain error doctrine. See Practice Book § 60-5. The plaintiff asserts that the court's decision "violates public policy and manifests injustice." Specifically, the plaintiff claims that the court committed plain error, resulting in manifest injustice, by (1) "[i]mposing sanctions on the plaintiff for reliance on misrepresentations made by the defendant's counsel"; (2) allowing the defendant to "greatly benefit from 'the same sauce . . . [that it] spread on the [plaintiff's goose]' despite that it 'also necessarily graced his own gander' "; (3) "[r]equiring the plaintiff to demonstrate sufficient evidence in support of an essential element of his cause of action prior to receipt of discovery that he [was] entitled to"; (4) "[r]equiring the plaintiff to produce his expert report based on unknown data, despite that such essential information was due and owing and being withheld improperly by the defendant"; and (5) "[w]rongfully converting the inapplicability of a § 52-592 (a) defense to a defense concerning jurisdiction . . . ."

"It is well established that the plain error doctrine . . . is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved [and nonconstitutional in nature], are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that . . . requires reversal of the trial court's judgment . . . for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . .

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . .

"[An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 595–97, 134 A.3d 560 (2016).

After a thorough review of the record, we are not convinced that the claimed errors are so clear that they are "[discernible] on the face of a factually adequate record" or "obvious in the sense of not debatable." (Internal quotation marks omitted.) Id., 596. Importantly, many of the claimed errors appear to pertain to the actions of the court in *Estela I*, and not those of the court in the present case. Further, even if the plaintiff had met his burden of establishing that the error was clear and harmful, he has failed to demonstrate "manifest injustice" that would permit use of this " 'extraordinary remedy' . . . ." Id., 597. Accordingly, we conclude that the plaintiff cannot prevail on his claim of plain error.

[3] Although § 52-592 (a) was not specifically pleaded in the complaint, the parties stipulated to the court that it was not necessary under *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 690–91, 974 A.2d 764 ("[w]hile it has been suggested that it might be desirable for the plaintiff to plead sufficient facts necessary to bring the matter within the purview of § 52-592 . . . [i]t has been and is the holding of [our Supreme Court] that matters in avoidance of the Statute of Limitations need not be pleaded in the complaint but only in response to such a defense properly raised" [internal quotation marks omitted]), cert. denied, 293 Conn. 916, 979 A.2d 488 (2009).

[4] General Statutes § 52-205 provides: "In all cases, whether entered upon the docket as jury cases or court cases, the court may order that one or more of the issues joined be tried before the others."

[5] Practice Book § 15-1 provides: "In all cases, whether entered upon the docket as jury cases or court cases, the judicial authority may order that one or more of the issues joined be tried before the others. Where the pleadings in an action present issues both of law and of fact, the issues of law must be tried first, unless the judicial authority otherwise directs. If some, but not all, of the issues in a cause are put to the jury, the remaining issue or issues shall be tried first, unless the judicial authority otherwise directs."

[6] On August 21, 2015, prior to a final judgment, the plaintiff appealed from

the court's decision that his action could not be maintained pursuant to § 52-592 (a). This court granted the defendant's motion to dismiss the appeal, by order dated October 20, 2015, for lack of a final judgment. On December 22, 2015, the plaintiff moved for judgment to be rendered in favor of the defendant, as the court's order on the motion to bifurcate so concluded the rights of the parties that further proceedings could not affect them. On January 4, 2016, the court rendered judgment in favor of the defendant.

[7] General Statutes § 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[8] General Statutes § 52-597 provides that "[n]o action for libel or slander shall be brought but within two years from the date of the act complained of."

[9] In his principal brief, the plaintiff argues that the present case differs from *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 40–41, because, in *Plante*, the defendants challenged the applicability of § 52-592 (a) in a motion to dismiss and a motion for summary judgment, before the issue was ultimately addressed by way of a motion to bifurcate. The plaintiff argues that the defendant in this matter "never raised this defense . . . in its motion for summary judgment . . . ." (Citations omitted.) Contrary to the plaintiff's assertions, however, the defendant did argue in its motion for summary judgment that the plaintiff's claims were time barred by the applicable statute of limitations. Thus, the plaintiff has failed to demonstrate how this case is distinguishable from *Plante*.

[10] The plaintiff argues that § 52-592 (a) is a limitation defense, and that the defendant waived this defense because it did not specifically assert in its motion for summary judgment that § 52-592 (a) does not apply, but merely asserted that the claims were time barred. Section 52-592 (a), however, is not a defense that the defendant must plead; rather, § 52-592 (a) is an exception to the statute of limitations special defense that allows a plaintiff to maintain an otherwise time barred action. See *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 690–91, 974 A.2d 764, cert. denied, 293 Conn. 916, 979 A.2d 488 (2009); see also footnote 3 of this opinion.

[11] General Statutes § 52-212 (a) provides in relevant part: "Any . . . nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense."

[12] We recognize that the plaintiff's counsel did state, at the start of the August 3, 2015 evidentiary hearing, that "the issue here is, did the plaintiff egregiously depart from the obligation to prosecute the case . . . ." Following that, however, the following colloquy took place:

"The Court: . . . The issue here is a very limited issue: mistake, accident or reasonable cause.

"[The Plaintiff's Counsel]: Yes. . . .

"The Court: . . . So, the motion to open nonsuit really doesn't matter here, does it? It's whether or not the nonsuit itself was entered and the cause of the nonsuit was not, from the defense perspective, mistake, accident or other reasonable cause?

"[The Plaintiff's Counsel]: I think that's correct, Your Honor.

"The Court: Okay. So, we don't have to deal with the deficiencies in the motion to open the nonsuit. . . . We only have to get to the reasons or what was done in an effort to prevent the nonsuit from entering . . . .

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: So, that's what we're limiting this hearing to.

"[The Plaintiff's Counsel]: You're correct, Your Honor.

"The Court: That it's mistake, accident or other reasonable cause."

[13] In crafting the "matter of form" standard for § 52-592 (a), our Supreme Court cited to § 52-212 and indicated that "[§ 52-212] has language resembling our construction of § 52-592 (a)." *Ruddock* v. *Burrowes*, supra, 243 Conn. 577 n.13.

[14] We also reject the plaintiff's argument that the court barred "evidence on the plaintiff's conduct that occurred outside of mistake, inadvertence or reasonable cause, such as excusable neglect." As the court noted in its memorandum of decision, and as the transcript supports, the plaintiff's witness testified at length as to the circumstances in which the discovery

noncompliance occurred. The plaintiff has failed to show how the hearing was "limited" in any way.

[15] In its order denying the plaintiff's motion to open nonsuit, the court in *Estela I* noted: "The defendant . . . moved for a judgment of nonsuit against the plaintiff . . . due to his failure to respond to the defendant's request for disclosure and production. After careful consideration . . . the court granted the motion for nonsuit on October 28, 2013. . . . On November 1, 2013, the plaintiff filed a motion to reargue/reconsider the court's granting of the nonsuit . . . [which] the court denied . . . on November 18, 2013. . . .

"On November 27, 2013, the plaintiff filed the present motion, motion to open nonsuit, and on December 2, 2013, the defendant filed its objection. Thereafter, on December 5, 2013, the plaintiff filed a notice of compliance (2003–2004 tax returns), and on December 11, 2013, the plaintiff filed a second notice of compliance (preliminary expert report). . . .

"The [plaintiff's] motion to open nonsuit was not filed with the appropriate supporting affidavit, [as required by General Statutes § 52-212a and Practice Book § 17-42]; therefore, this court is without the authority to set aside the nonsuit. . . . Even if the court were to consider [the] late fil[ed] affidavit, the plaintiff failed to establish that 'a good cause of action . . . existed . . . at the time of the rendition of the judgment [of nonsuit], and that the plaintiff . . . was prevented by mistake, accident or other reasonable cause from prosecuting the action . . . .' His filing of the notices of compliance AFTER the filing of the [defendant's] motion for [a judgment of] nonsuit is clear indication that he had failed to comply with the written discovery either at the time of the entry of nonsuit or at the time of the filing of the motion to open nonsuit. Furthermore, the plaintiff argues that his admitted noncompliance is due to the fault of either the defendant or a federal agency, honest mistake, grueling trial schedule, and/or lack of prejudice and/or harm to the defendant.

"The court finds no merit in the plaintiff's arguments or explanations. This is not the first instance of the plaintiff's failure to comply with written discovery . . . . Moreover, the plaintiff has admitted in his motion to open nonsuit that he 'purposefully held off on continuing his review and analysis of his own documents to cull out relevant information because he expected that the request[ed] patient information would be produced by the defendant . . . .' The plaintiff has failed to establish . . . that he was prevented from prosecuting this matter because of 'mistake, accident or other reasonable cause.' " (Citations omitted.)

[16] The plaintiff also argued, in essence, in the motion to open the judgment of nonsuit "that his failure to produce the tax returns for the requested years was an oversight, that his failure to produce the requested expert report on the plaintiff's losses was premised in turn on the defendant's own failure to produce the requisite patient information, and that the 'grueling trial schedule' of the plaintiff's attorney was partly responsible for the various delays at issue." *Estela* v. *Bristol Hospital, Inc.*, supra, 165 Conn. App. 103–104.

[17] During the August 3, 2015 evidentiary hearing, the following colloquy took place:

"[Attorney Leonhardt]: . . . When I got the motion for nonsuit on [September 26] I called Attorney [Michael G.] Rigg [the defendant's counsel], and I don't recall if I spoke with Attorney Rigg or with Attorney [Amy F.] Goodusky [cocounsel for the defendant], but they did agree to give us additional time, and we went through the documents and—

"The Court: And you confirmed it in writing? . . .

"[Attorney Leonhardt]: As best I can recollect, Your Honor, it was not reduced to writing. . . . [M]y understanding was that we would have additional time . . . .

"The Court: . . . Should you have relied on Attorney Rigg or Attorney Goodusky's representation that they would provide you with these things?

"[Attorney Leonhardt]: No, Your Honor.

"The Court: Okay.

"[Attorney Leonhardt]: That was my mistake."

[18] Further, as the court commented in a footnote in its memorandum of decision: "The pattern of noncompliance with court orders continues from *Estela I* to [the present action]. The plaintiff has recently filed two motions for extension of time nunc pro tunc after failing to comply with this court's scheduling deadlines. While this conduct is not directly relevant to the issue at hand, the plaintiff's continued dilatory conduct does not reflect positively on his claim that his failure to comply with the prior court's orders was due to his counsel's reliance on representations made by [the defendant's]

counsel or impossibility."

---