******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# KRISTEN KUSELIAS *v.* ZINGARO & CRETELLA, LLC, ET AL.
## (AC 45952)

Suarez, Clark and Seeley, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, an attorney and the law firm with which he was engaged in the practice of law, for their alleged legal malpractice in connection with their representation of her during certain postdissolution proceedings. The trial court had rendered a judgment of nonsuit in a prior action against these same defendants as a result of the plaintiff's failure to comply with certain discovery orders and thereafter denied the plaintiff's motion to open the judgment. The plaintiff commenced the present action pursuant to the accidental failure of suit statute (§ 52-592), alleging, inter alia, that the defendants had entered into a stipulation with the plaintiff's former husband and his attorney that had been reached without her participation and, as a result, she had incurred additional legal fees, loss of income and financial obligations. The defendants filed a motion for summary judgment, arguing that the plaintiff's prior action against the defendants alleged nearly identical claims, and that her claims of legal malpractice and negligent misrepresentation were time barred and could not be saved by § 52-592. The defendants argued that the prior action had resulted in a judgment of nonsuit against the plaintiff for disciplinary reasons following her noncompliance with the court's discovery orders and, therefore, that judgment had not been rendered as a result of a matter of form. The trial court rendered judgment granting the defendants' motion for summary judgment, observing that it was undisputed that, at the time of the hearing on the motion to open the judgment of nonsuit, the plaintiff had still not disclosed an expert witness, and that the plaintiff's attorney, V, had claimed at the hearing that an expert had not been disclosed because he did not want to ask the plaintiff to pay for an expert witness after a judgment of nonsuit had been rendered. The court concluded that the failure to disclose an expert was a deliberate decision to avoid costs and that this failure constituted intentional, dilatory conduct and was clearly egregious. The court also noted that, although the plaintiff had averred that she experienced psychological stress and related mental health symptoms when she attempted to comply with her discovery obligations because they caused her to recall unpleasant facts related to her relationship with her former husband, these concerns did not constitute excusable neglect, inadvertence, or mistake. The court subsequently denied the plaintiff's motion to reargue and reconsider, and this appeal followed. *Held*:

1. The plaintiff could not prevail on her claim that the trial court improperly rendered summary judgment in favor of the defendants with respect to the legal malpractice and negligent misrepresentation counts of her complaint, which was based on her claim that those counts were not time barred by the applicable statute of limitations (§ 52-577) because they were properly brought pursuant to § 52-592: the trial court correctly determined that there was no genuine issue of material fact that the conduct that led to the judgment of nonsuit in the prior action was not a matter of form, it was undisputed that the plaintiff had failed to disclose an expert witness by the time of the hearing on the motion to open the judgment of nonsuit in the prior action, and the plaintiff's deliberate strategy of failing to retain an expert to avoid costs was contrary to her obligations pursuant to the applicable rule of practice (§ 13-4) and the discovery deadlines imposed by the court in the prior action, and, thus, insofar as the judgment of nonsuit was based on the plaintiff's failure to disclose an expert, the judgment resulted from a deliberate disregard for the court's authority; moreover, the court considered the fact that the judgment of nonsuit in the prior action was based on the plaintiff's failure to respond to interrogatories and requests for production, and it was clear that the plaintiff had engaged in a pattern of missing deadlines for compliance and, after the fact, having sought extensions of

time in which to comply; furthermore, this court agreed with the trial court that the personal trauma experienced by the plaintiff when attempting to comply with the trial court's clear and unambiguous discovery orders, although difficult, did not amount to excusable neglect, and neither the record nor the plaintiff's affidavit suggested that V counseled the plaintiff with respect to the effect of her failure to comply with the court's orders.

2. The trial court did not abuse its discretion in denying the plaintiff's motion to reargue and reconsider its ruling on the defendant's motion for summary judgment: the plaintiff's motion did not demonstrate to the trial court that there was some decision or other principle of law that would have had a controlling effect and had been overlooked or that there had been a misapprehension of facts but, rather, was the quintessential example of a party seeking the proverbial second bite of the apple, as the record reflected that the plaintiff used the motion to present a different argument than that on which she had relied in opposing the motion for judgment of nonsuit in the prior action, when she sought to open the judgment of nonsuit, and in opposing the motion for summary judgment in the present action; moreover, the plaintiff submitted certain evidence in support of the motion to reargue and reconsider that contradicted the evidence on which she had relied previously, and the nature of that evidence, which pertained to events that predated the judgment of nonsuit, compelled the conclusion that it was not newly discovered, and, under our rules of practice (§ 17-45), the time to submit relevant evidence in connection with a motion in support of or in opposition to a motion for summary judgment is before the motion is heard, not following an adverse ruling on the motion.

Argued November 9, 2023—officially released March 12, 2024

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged legal malpractice, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Abrams, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon; thereafter, the court, *Abrams, J.*, denied the plaintiff's motion to reargue and reconsider, and the plaintiff appealed to this court. *Affirmed.*

*Kenneth A. Votre*, for the appellant (plaintiff).

*Valerie M. Ferdon*, with whom, on the brief, was *Kerry R. Callahan*, for the appellee (defendants).

*Opinion*

SUAREZ, J. The plaintiff, Kristen Kuselias, brought the civil action underlying this appeal, in which she raised claims of legal malpractice, breach of contract, and negligent misrepresentation against the defendants, the law firm of Zingaro & Cretella, LLC, and Attorney Eugene J. Zingaro. The plaintiff appeals from (1) the judgment of the trial court rendered in favor of the defendants after it granted their motion for summary judgment with respect to all three counts of her complaint and (2) the denial of her subsequent motion to reargue and reconsider. The plaintiff claims that the court erred by (1) granting the defendants' motion for summary judgment with respect to her claims of legal malpractice and negligent misrepresentation, despite her assertion that these claims could properly be brought pursuant to General Statutes § 52-592, the accidental failure of suit statute, and (2) denying her motion to reargue and reconsider its ruling on the motion for summary judgment. We affirm the judgment of the trial court.

The following procedural history is relevant to the claims raised in the present appeal. In July, 2021, the plaintiff commenced the underlying action. In the plaintiff's complaint, she raised three claims related to the legal representation that she received from Zingaro and the law firm with which he was engaged in the practice of law, Zingaro & Cretella, LLC, in connection with postdissolution proceedings involving her former husband.

In count one of the plaintiff's complaint, sounding in legal malpractice, she alleged that, from approximately August 12 to December 7, 2015, the defendants represented the plaintiff in the postdissolution proceedings. The plaintiff retained the defendants "to perform discovery and schedule a hearing to have the financial orders [that were the product of the dissolution action] opened and redetermined based on the discovery of new and significantly different financial information [than] was produced at the time of the divorce." The defendants' appearance was in lieu of another attorney, Michael Perzin. Perzin had successfully litigated a motion to open the August 30, 2012 judgment of dissolution on the basis of alleged fraud committed by the plaintiff's former husband during the dissolution proceeding.[1] Specifically, following an *Oneglia* hearing,[2] the court determined that the plaintiff had substantiated the allegations of fraud beyond mere suspicion, thus permitting her to engage in discovery.

The plaintiff further alleged that, on or about October 22, 2015, Zingaro filed a second motion to open and vacate the August 30, 2012 judgment of dissolution and requested that the court schedule a hearing on the motion. The court scheduled a hearing for December

7, 2015. In her complaint, the plaintiff alleged that, at the hearing on the motion to open, Zingaro, having failed to conduct reasonable discovery to reveal the nature and extent of the fraud that had occurred in connection with the dissolution action,[3] conferred with the plaintiff's former husband and his attorney. The result of this meeting was a stipulation that the plaintiff alleges was reached without her participation and was detrimental to her as it left her unable to support herself. The plaintiff alleged that the defendants "agreed to terminate the plaintiff's then existing support and alimony four years earlier than had been agreed to in the initial August 30, 2012 judgment [of dissolution], failed to obtain adequate support, and failed to obtain an adequate division of marital assets for the plaintiff." Additionally, the plaintiff alleged that "the defendants failed to structure, discuss with the plaintiff, and negotiate protections for the plaintiff relating to the plaintiff's former husband's retirement accounts. The defendants waived any and all claims for unpaid support, sanctions, additional discovery, and attorney's fees. The defendants actually disclaimed the fraud upon which the judgment was opened." Moreover, the plaintiff alleged that "[t]he defendants also waived claims for attorney's fees and support based upon the former husband's earning capacity." The plaintiff alleged that the defendants effectively "waived all the benefits obtained by opening the judgment for fraud." The plaintiff further alleged that the stipulation, which was "approved" by the defendants and which they pressured her to accept, failed to meet the applicable standard of care in several enumerated ways, caused her "sustained economic and monetary loss due to a loss of property and alimony rights, future alimony, and a division of hidden assets." Furthermore, the plaintiff alleged that the defendants' conduct caused her to incur additional legal fees, loss of income, and financial obligations.

In count two, sounding in breach of contract, the plaintiff, relying on the factual allegations set forth in count one, alleged that "[t]he legal relationship and agreement between the plaintiff and the defendants constituted a contract which was formed by the execution of the retainer agreement and by virtue of the oral agreements and understandings of the parties." The plaintiff alleged that the contract "was a contract for a specific result, namely, the representation of the plaintiff's interests during her postjudgment action." According to the plaintiff, the defendants breached the terms of the contract, and, as a direct and proximate result of that breach, she suffered a variety of damages.

In count three, sounding in negligent misrepresentation, the plaintiff, relying on the factual allegations set forth in count one, alleged that "[t]he defendants, at various times during [their] representation, made material representations of fact that the defendants knew, or reasonably should have known, were untrue." These

misrepresentations related to the adequacy of the alimony award and property division, the accuracy of the financial information provided by the plaintiff's former husband, the adequacy of the stipulation to protect the plaintiff's rights in the marital estate and the marital income, the fact that the defendants would conduct reasonable discovery, and the fact that the defendants would obtain for the plaintiff adequate alimony and support. The plaintiff alleged that she reasonably relied on these material factual misrepresentations and that, as a result, she "was damaged and lost the likelihood of additional alimony, additional property, incurred excessive and unnecessary attorney's fees, and lost support and interest."

In her complaint, the plaintiff alleged that the action was brought pursuant to the accidental failure of suit statute, § 52-592. Alternatively, the plaintiff alleged that the action was being brought pursuant to an executive order, namely, Executive Order No. 7G, which was issued by Governor Ned Lamont on March 19, 2020.[4] The plaintiff sought monetary and punitive damages, costs, attorney's fees, and any further relief that the court deemed fair, just, and equitable.

In their answer, the defendants admitted that they represented the plaintiff in the postdissolution proceedings and that they had advised her and negotiated a settlement on her behalf. The defendants either denied or left the plaintiff to her proof with respect to many of the factual allegations in her complaint. The defendants denied that they breached the applicable standard of care, breached any contract with the plaintiff, or made any misrepresentations to the plaintiff. By way of a first special defense, the defendants alleged that the first and third counts were barred by the three year statute of limitations applicable to tort actions, General Statutes § 52-577. By way of a second special defense, the defendants alleged that the second count was barred by the three year statute of limitations applicable to actions for breach of an oral contract, General Statutes § 52-581.

On January 11, 2022, the defendants filed a motion for summary judgment. The defendants argued in relevant part that "[t]he plaintiff initiated an original action against the defendants three years ago; [*Kuselias* v. *Zingaro & Cretella, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-19-6087780-S (*Kuselias I*)]; alleging legal malpractice, breach of contract, and negligent misrepresentation. *Kuselias I* resulted in a judgment of nonsuit against the plaintiff for her blatant disregard of court orders. The plaintiff has now [in the present case] filed a nearly identical complaint, *Kuselias II*,[5] seeking to relitigate the same claims. Contrary to the plaintiff's contentions, the first and third counts are time barred and cannot be saved by the accidental failure of suit statute . . . ."[6] (Footnote added.)

In the defendants' memorandum of law accompanying their motion for summary judgment, the defendants elaborated on their argument, stating that, as a matter of law, the claims in the first and third counts of the complaint were subject to the three year statute of limitations for tort claims codified in § 52-577. The defendants argued that the plaintiff terminated the defendants' representation of her in the postdissolution proceedings on May 7, 2016, and, thus, she was required to commence the action based on counts one and three no later than May 7, 2019. The plaintiff, however, commenced the present action in July, 2021.

The defendants argued that there was no genuine issue of material fact with respect to whether the accidental failure of suit statute could be applied to save the claims set forth in counts one and three.[7] Specifically, the defendants argued that the facts in *Kuselias I* reflect that the judgment of nonsuit was rendered for disciplinary reasons following the plaintiff's egregious noncompliance with discovery, not because of a matter of form that would have brought the failure of the prior action to be tried within the purview of the accidental failure of suit statute. In an attempt to demonstrate that the accidental failure of suit statute could not be applied in the present case, the defendants relied on exhibits that they had attached to their memorandum of law. These exhibits detailed the procedural history in *Kuselias I* and, in particular, the history of the plaintiff's noncompliance with discovery that led the court, *Wahla, J.*, on October 26, 2020, to grant the defendants' motion for a judgment of nonsuit for the plaintiff's failure to comply with discovery.

In support of their motion for summary judgment in *Kuselias II*, the defendants presented evidence that, in *Kuselias I*, the plaintiff had repeatedly failed to meet deadlines, and then failed to meet extended deadlines, for compliance with a request for production of certain documents, interrogatories, and a request to disclose an expert witness. The defendants presented evidence that, in *Kuselias I*, in light of the plaintiff's repeated noncompliance, they brought a motion for order of compliance before the court, *Wilson, J.*, which granted the motion, thereby affording the plaintiff until March 16, 2020, to comply with discovery.[8] The plaintiff did not comply with this deadline, which led the defendants to bring the motion for nonsuit in *Kuselias I*.

In support of their motion for summary judgment in *Kuselias II*, the defendants also relied on the fact that, after the court granted the motion for nonsuit in *Kuselias I*, the plaintiff filed a motion to open in *Kuselias I*, which is governed by General Statutes § 52-212.[9] In connection with the motion for summary judgment, the defendants submitted as an exhibit the transcript from the May 5, 2021 hearing on the motion to open. The transcript reflects that, in *Kuselias I*, the court, *Wahla,*

*J.*, afforded the plaintiff's counsel an opportunity to explain what reasonable cause existed that prevented the plaintiff from prosecuting her action. The plaintiff's counsel, Kenneth A. Votre, represented that the plaintiff had "difficult issues" as a result of the dissolution of her marriage and that he had difficulty obtaining the records sought, he had to depend on third parties to obtain the information sought, and someone working in his office had contracted COVID-19, which resulted in his office being closed for an undisclosed amount of time. In its ruling, the court emphasized the importance of compliance with the rules of discovery, and observed that, "when someone knocks on the door of the court, we have procedures in place to follow." The court was not persuaded by the arguments raised by the plaintiff's counsel, noting that the arguments were, in effect, an invitation for the court to ignore the noncompliance at issue. The court stated that it had reviewed the file and did not see that good faith efforts to comply with discovery had been made. Thus, in *Kuselias I*, the court ultimately denied the motion to open. The plaintiff did not appeal from the judgment of nonsuit or the denial of her motion to open in *Kuselias I*.

The plaintiff in *Kuselias II* filed a memorandum of law in opposition to the defendants' motion for summary judgment. Not disputing that counts one and three were time barred, the plaintiff attempted to demonstrate that a genuine issue of material fact existed with respect to the applicability of the accidental failure of suit statute. In support of the plaintiff's memorandum of law, the plaintiff submitted her own affidavit. Relying on the averments therein, the plaintiff in her objection attempted to demonstrate that, in *Kuselias I*, she made attempts to comply with the court's discovery order but could not do so "[d]ue to the onset of panic attacks and anxiety [and that she] was triggered when she reviewed the documents from her divorce. This inability in the prior action led the trial court to grant [a] nonsuit in favor of the [defendants] without an evidentiary hearing." The plaintiff attempted to demonstrate that she "simply could not discuss and provide the information [regarding the discovery request at issue] to counsel." She argued that the averments in the affidavit demonstrated that she attempted to respond to the discovery request, developed anxiety and panic attacks when she attempted to respond to the request, became homeless and unemployed during the period of time at issue, concealed her suffering due to the fear that exposure would affect her children and custody, and "kept this information from her counsel and the court because of fear and embarrassment." In light of the foregoing, the plaintiff argued that a genuine issue of material fact existed with respect to whether the failure to comply with the court's discovery request in *Kuselias I* was due to excusable neglect, rather than serious misconduct. Thus, the plaintiff argued that the circumstances of her

noncompliance in *Kuselias I* entitled her to the benefit of the accidental failure of suit statute in *Kuselias II*.

On May 16, 2022, the court, *Abrams, J.*, heard oral argument with respect to the defendants' motion for summary judgment in *Kuselias II*. On August 29, 2022, the court, in a thorough memorandum of decision, rendered its judgment granting the motion. The court aptly summarized the plaintiff's argument, namely, that she was entitled to try her case on its merits because the judgment of nonsuit in *Kuselias I* had been rendered for a matter of form. The court noted that the plaintiff had attempted to demonstrate that she was unable to comply with discovery "as a result of the emotional turmoil triggered by her attempts to review the documents relevant to discovery. . . . She contends that she could not discuss and provide the information to counsel and that she hid her problem out of fear and embarrassment." (Citation omitted.) In its analysis of whether the accidental failure of suit statute applied, the court correctly stated that "[t]he critical question is whether the judgment of nonsuit entered in *Kuselias I* resulted from a 'matter of form.' The defendants argue that there is no genuine issue of material fact that the nonsuit did not result from mistake, inadvertence, or excusable neglect. Rather, they contend, the plaintiff blatantly disregarded the court's orders with respect to interrogatory responses, document production, and expert disclosure compliance. . . . They specifically point out that the plaintiff has not offered any explanation for her failure to disclose an expert witness. . . . Moreover, they argue that the noncompliance in this case was not a singular, isolated incident, but a pattern that persisted over one year and four months. . . . They point out that, neither the fact [that] the production demanded required review of a large volume of nearly 7000 pages of documents, nor that the plaintiff became confused with respect to timelines will carry the day. . . . Finally . . . they suggest that the explanation the plaintiff offers in her affidavit for discovery noncompliance—that she had a difficult time and her counsel did not understand how to help her—is vague at best."

The court observed that, setting aside the plaintiff's reasons for not responding to requests for production of documents or replying to interrogatories in *Kuselias I*, there was no genuine issue of material fact that, at the time of the May 5, 2021 hearing on the motion to open the judgment of nonsuit in *Kuselias I*, the plaintiff had still not disclosed an expert witness. Indeed, the court observed that, at the May 5, 2021 hearing, the plaintiff's counsel acknowledged that an expert had not been disclosed because he did not feel it was appropriate to ask his client to pay for an expert witness in light of the fact that a judgment of nonsuit had been rendered. The court stated that failing to disclose an expert witness without a viable explanation is not a

matter of form, and that "there is no genuine dispute of material fact that the plaintiff's failure to disclose an expert did not result from excusable neglect, mistake, or inadvertence." In ruling on the motion for summary judgment, the court noted that "the plaintiff's only piece of evidence, her affidavit, does not address her failure to comply with expert disclosure, but only her purported inability to address the task of reviewing documents. . . . Nor does the plaintiff address noncompliance with expert disclosure in her brief. In the absence of a genuine dispute of material fact, whether a prior judgment of nonsuit resulted from a matter of form is a legal question for the trial court." (Citation omitted.) The court concluded that the record in *Kuselias I* reflected that the failure to disclose an expert was a decision made by the plaintiff to avoid costs, and that this failure amounted to intentional and dilatory conduct that was "clearly egregious" in nature.

With respect to the issue of noncompliance with discovery in *Kuselias I*, the court, in ruling on the motion for summary judgment in *Kuselias II*, noted that the plaintiff had attempted to demonstrate that it was very difficult for her to comply with the defendants' interrogatories and its request for the production of documents. The court stated, however, that, because the plaintiff did not aver in her affidavit that her failure to respond to the defendants' discovery requests was the result of a serious illness or a circumstance beyond her control, her affidavit was, itself, proof that *Kuselias I* was not terminated due to mistake or inadvertence. Although the court noted that the plaintiff had averred that she experienced psychological stress and related mental health symptoms when she attempted to comply with her discovery obligations, the court reasoned that "[a] lack of diligence resulting from being busy, distracted, or otherwise experiencing the stresses of life is not, in and of itself, excusable neglect, inadvertence, or mistake." The court noted that, although it did not mean to diminish the plaintiff's psychological symptoms, it was presented with a situation in which it appeared that the plaintiff's counsel did not fulfill his obligation "to step in and address the issues outlined in the plaintiff's affidavit" but had, instead, pursued a policy of "simply [standing] back and [waiting] repeatedly [to] throw themselves on the mercy of the court after failure to meet deadline after deadline."

On September 19, 2022, after the court rendered summary judgment in favor of the defendants with respect to all three counts of the plaintiff's complaint, the plaintiff filed a motion to reargue and reconsider pursuant to Practice Book § 11-11 et seq. The plaintiff argued that the court had misapprehended the facts and misapplied the law. On September 27, 2022, the defendants filed an objection to the plaintiff's motion to reargue and reconsider. On September 30, 2022, the plaintiff filed a reply to the defendants' objection. By order dated

October 11, 2022, the court denied the plaintiff's motion to reargue and reconsider. This appeal from the court's rendering of summary judgment and the court's denial of the motion to reconsider followed. Additional procedural history will be set forth as relevant.

I

First, the plaintiff claims that the court erred in granting the defendants' motion for summary judgment with respect to her claims of legal malpractice and negligent misrepresentation because these claims could properly be brought pursuant to the accidental failure of suit statute. We are not persuaded.

We begin by setting forth the following applicable legal principles. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [or to deny a] motion for summary judgment is plenary." (Footnote omitted; internal quotation marks omitted.) *Atlantic St. Heritage Associates, LLC* v. *Atlantic Realty Co.*, 216 Conn. App. 530, 539–40, 285 A.3d 1128 (2022).

"[I]n the context of a motion for summary judgment based on a statute of limitations special defense, [the defendants] typically [meet their] initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the plaintiff asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of

the statute. . . . Put differently, it is then incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Citation omitted; internal quotation marks omitted.) *Iacurci* v. *Sax*, 313 Conn. 786, 799, 99 A.3d 1145 (2014). In the present case, although the plaintiff relies not on an equitable exception to the statute of limitations, but on a remedial statute, the plaintiff's burden in opposing the defendants' motion for summary judgment is not in dispute. After the defendants set forth uncontroverted facts demonstrating that the claims set forth in counts one and three of *Kuselias II* were brought outside of the statutory limitation period established by § 52-277, it was incumbent on the plaintiff to establish a factual predicate from which it could be determined that a genuine issue of material fact existed with respect to the applicability of § 52-592.

Section 52-592 (a) provides: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form; or if, in any such action after a verdict for the plaintiff, the judgment has been set aside, or if a judgment of nonsuit has been rendered or a judgment for the plaintiff reversed, the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

"Deemed a 'saving statute,' § 52-592 enables plaintiffs to bring anew causes of actions despite the expiration of the applicable statute of limitations." *Pepitone* v. *Serman*, 69 Conn. App. 614, 619, 794 A.2d 1136 (2002). Section 52-592 "is remedial and is to be liberally interpreted." *Ross Realty Corp.* v. *Surkis*, 163 Conn. 388, 393, 311 A.2d 74 (1972). "[B]y its plain language, [§ 52-592] is designed to prevent a miscarriage of justice if the [plaintiff fails] to get a proper day in court due to the various enumerated procedural problems. . . . It was adopted to avoid hardships arising from an unbending enforcement of limitation statutes. . . . Its purpose is to aid the diligent suitor. . . . Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts." (Internal quotation marks omitted.) *Davis* v. *Family Dollar Store*, 78 Conn. App. 235, 240, 826 A.2d 262 (2003), appeal dismissed, 271 Conn. 655,

859 A.2d 25 (2004).

The plaintiff expressly relies on the portion of § 52-592 (a) applicable to "any matter of form." Our Supreme Court has explained: "In previous cases considering the application of the accidental failure of suit statute, we have declined to adopt an extremely broad construction of the statute to the effect that, [t]he phrase, any matter of form, was used in [contradistinction] to matter of substance, as embracing the real merits of the controversy between the parties. . . . Rather, we have emphasized that § 52-592 (a) does not authorize the reinitiation of all actions not tried on . . . [their] merits, and that, [i]n cases where we have either stated or intimated that the any matter of form portion of § 52-592 would not be applicable to a subsequent action brought by a plaintiff, we have concluded that the failure of the case to be tried on its merits had not resulted from accident or even simple negligence. . . .

"In concluding that even disciplinary dismissals are not excluded categorically from the relief afforded by § 52-592 (a), we have noted the fact-sensitive nature of the inquiry and held that, [t]o enable a plaintiff to meet the burden of establishing the right to avail himself or herself of the statute, a plaintiff must be afforded an opportunity to make a factual showing that the prior dismissal was a matter of form in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect. . . . Indeed, even in the disciplinary context, only egregious conduct will bar recourse to § 52-592." (Citations omitted; emphasis omitted; footnotes omitted; internal quotation marks omitted.) *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 49–51, 12 A.3d 885 (2011); see also, e.g., *Ruddock* v. *Burrowes*, 243 Conn. 569, 575–76, 706 A.2d 967 (1998) (holding that disciplinary dismissal in prior action did not automatically foreclose plaintiffs from seeking recourse under accidental failure of suit statute and discussing balance that court must strike when weighing remedial nature of statute and "the responsibility of the court to establish standards for the processing of cases and also, when necessary, to enforce compliance with such standards" (internal quotation marks omitted)).

In the present case, the plaintiff was afforded an opportunity to present evidence and make a factual showing that the disciplinary dismissal—the judgment of nonsuit—that occurred in *Kuselias I* was a matter of form that fell within the ambit of § 52-592. In her opposition to the motion for summary judgment, the plaintiff relied on the procedural history of *Kuselias I* and the alleged circumstances of her noncompliance with discovery in *Kuselias I*, as detailed in her affidavit.

In its decision rendering summary judgment, the court accurately characterized the evidence before it

with respect to the plaintiff's failure to disclose an expert in *Kuselias I*. The court explained: "Failure to disclose an expert without a viable explanation is not a matter of form. . . . This rule is particularly applicable in the present legal malpractice case because the plaintiff must furnish an expert to establish both the relevant standard of care and causation. . . . Consistent with Practice Book § 13-4, the [plaintiff was bound to adhere to the discovery deadline ordered by the court]. . . .

"In the present matter, there is no genuine dispute of material fact that the plaintiff's failure to disclose an expert did not result from excusable neglect, mistake, or inadvertence. Per the original scheduling order in *Kuselias I*, the plaintiff had a September 20, 2019 deadline, which the court twice extended, to disclose experts. . . . On May 5, 2021, at oral argument on the motion to open, the plaintiff's counsel informed the court that, '[i]n order for us to put this case on track, we would have to disclose our expert witness. And we have not disclosed an expert because at this point the case is in a [nonsuit state]. I can't ask the client to pay for an expert for no reason at this point. But I could promptly do so within [thirty] to [forty-five] days . . . .' Counsel also pointed out that *Kuselias I* had not been scheduled for trial. Denying the motion [to open], Judge Wahla elaborated that the plaintiff had not complied with the expert disclosure deadline because she never obtained an expert in the first instance, and still had not done so as of the May 5, 2021 hearing. . . . Rejecting the plaintiff's contentions, Judge Wahla chastised the plaintiff's counsel: 'Disclosure is not meant whether it's going to be a jury trial or not. Disclosure is meant that the other party can depose, discern where the case stands so that the resolution can be brought.' For her part, the plaintiff's only piece of evidence, her affidavit, does not address her failure to comply with expert disclosure, but only her purported inability to address the task of reviewing documents. . . . Nor does the plaintiff address noncompliance with expert disclosure in her brief [submitted in opposition to the motion for summary judgment]." (Citations omitted; emphasis omitted; footnote omitted.)

It was not in dispute that the plaintiff failed to retain, let alone disclose, an expert witness by the time of the May 5, 2021 hearing on the motion to open the judgment of nonsuit in *Kuselias I*. In light of the explanation proffered by the plaintiff's counsel at the May 5, 2021 hearing on the motion to open, the failure to retain an expert may only be attributed to the plaintiff's deliberate goal of avoiding costs. This deliberate strategy was contrary to the plaintiff's obligations pursuant to Practice Book § 13-4, which governs the timely disclosure of expert witnesses, and the multiple deadlines for disclosure imposed by the court in *Kuselias I*. In granting the motion for summary judgment in *Kuselias II*, the

court concluded that a genuine issue of material fact did not exist with respect to the issue of whether "intentional dilatory conduct" led to the judgment of nonsuit in *Kuselias I*, and we agree. This is not a circumstance in which the action was defeated by mistake, inadvertence, or excusable neglect; insofar as it was based on the plaintiff's failure to disclose an expert, the judgment of nonsuit resulted from a deliberate disregard for the court's authority. Accordingly, the plaintiff did not demonstrate that there was a genuine issue of material fact with respect to whether the accidental failure of suit statute applied.[10]

In addition to examining the judgment of nonsuit as it related to the plaintiff's failure to disclose an expert, the court in *Kuselias II* also considered the fact that the judgment of nonsuit rendered in *Kuselias I* was based on the plaintiff's failure to respond to interrogatories and requests for production. It is clear from the relevant materials on which the defendants relied in support of their motion for summary judgment, related to the proceedings in *Kuselias I*, that the plaintiff engaged in a pattern of missing deadlines for compliance and then seeking further extensions of time in which to comply with the discovery requests. The evidence before the court reflects that Judge Wahla, in denying the plaintiff's motion to open the judgment of nonsuit, took issue with the fact that any difficulties that the plaintiff may have experienced in responding to these requests were not brought to the court's attention until *after* she failed to comply. The court chastised the plaintiff for commencing *Kuselias I* and then engaging in a pattern of disregarding discovery orders. The court expressly stated that the plaintiff did not act in good faith with respect to the requests and, for that reason, it did not find that there was reasonable cause to grant the motion to open.

In opposing the motion for summary judgment in *Kuselias II*, the plaintiff submitted her own affidavit, in which she attempted to demonstrate that the judgment of nonsuit was rendered as the result of a matter of form. The reasons set forth in the affidavit, viewed in the light most favorable to the plaintiff, do not suggest mistake or inadvertence. The plaintiff does not dispute that noncompliance occurred but asserts that the noncompliance was the result of excusable neglect in that she experienced negative emotional, physical, and psychological effects when she either considered or attempted to comply with the discovery requests at issue that were made by the defendants. The plaintiff averred that she suffered anxiety, hopelessness, panic attacks, sleep disturbances, poor concentration, flashbacks, painful thoughts, nightmares, increased heart rate, and "severe pressure in [her] head." She did not, however, describe the frequency or duration of these negative events during the lengthy period in which she failed to comply with discovery orders. Rather, the plaintiff stated in her

affidavit that the discovery requests triggered negative emotions and anxiety because they caused her to recall unpleasant facts related to her relationship with her former husband, the representation afforded to her by Zingaro, and the stipulation that Zingaro negotiated on her behalf. The plaintiff explained in the affidavit that she had made some attempts to respond to the discovery requests, but she was "unable to do so."[11] The plaintiff also averred that she was unaware of the importance of her timely responses, did not understand at the time how her emotional issues were affecting her, and did not make her attorney aware of the reasons why she was not quickly responding to the requests. The plaintiff stated in her affidavit that myriad stressors, some of which were not directly tied to the postdissolution action, were affecting her emotional well-being, including general financial hardship, her beginning a new job, the onset of the COVID-19 pandemic, the fact that her children were "suddenly homeschooling" during the pandemic, and the fact that she decided not to undergo genetic testing to determine her future likelihood of suffering from a rare genetic and terminal disorder.[12]

In granting the motion for summary judgment, the court properly considered these averments in the light most favorable to the plaintiff.[13] The court concluded, however, that they did not amount to excusable neglect. Rather, the court, although acknowledging "the severity of the problems the plaintiff encountered," reasoned that they were largely based on "the personal stress and strain engendered by litigation" related to an acrimonious divorce. The law does not provide an easily applied test to determine what situations amount to excusable neglect. Our case law merely contrasts excusable neglect, or matter of form in general, with conduct that might be deemed to be egregious or conduct that suggests gross negligence. *Kuselias I* does not reflect an isolated failure to comply with discovery requests, that a mistake was made, or that a delay occurred due to an unfortunate misunderstanding or oversight. Rather, *Kuselias I* reflects a reoccurring failure to comply timely with discovery obligations due to a lack of diligence by the plaintiff and her attorney. We agree with the court that the events and personal trauma experienced by the plaintiff when she attempted to respond to the court's clear and unambiguous discovery orders, although difficult for her to endure, did not amount to *excusable* neglect. The evidence before the court in connection with the motion for summary judgment reflects a pattern of the plaintiff attempting to comply with the orders at issue, repeatedly being "triggered" by the information related to her former husband and Zingaro, and then simply failing to comply with the orders. The plaintiff's affidavit, viewed in the light most favorable to her, reflects that compliance was difficult, but not impossible, and that, although she was mindful that she was having difficulty prosecuting the action

that she had initiated, the result of the plaintiff's efforts was not to comply with the court's orders. The plaintiff describes numerous obstacles to justify her failure to respond to the discovery requests but does not describe a constant inability that made compliance impossible over the lengthy period of time in which noncompliance occurred in this case. Like the trial court, we note that neither the record nor the plaintiff's affidavit suggests that the plaintiff's counsel took any steps to assist the plaintiff or to counsel her with respect to the effect of her failure to comply with clear and unambiguous court orders, let alone communicate these reasons to the court in a timely manner prior to missed deadlines. Instead, the plaintiff, in her affidavit, averred that "counsel did not make [her] aware [of] the importance of the responses" and that "[her] attorney did not understand how to help [her]."

The facts of this case are analogous to those that were at issue in *Estela* v. *Bristol Hospital, Inc.*, 179 Conn. App. 196, 180 A.3d 595 (2018) (*Estela II*). *Estela II* followed a prior action between the parties; *Estela* v. *Bristol Hospital, Inc.*, Superior Court, judicial district of New Britain, Docket No. CV-11-6013260-S (*Estela I*); that resulted in a judgment of nonsuit as a result of the plaintiff's discovery noncompliance. Id., 200, 210. The plaintiff in *Estela II*, relying on the accidental failure of suit statute to avoid a claim that the action was time barred, commenced a second, nearly identical action against the same defendant that he had named in *Estela I*. Id., 201–202. The defendant filed a motion for summary judgment in *Estela II* on the ground that the action was time barred. Id. Later, the court granted the defendant's motion to bifurcate the trial to determine whether § 52-592 saved the plaintiff's case. Id., 205–206. The trial court, concluding that *Estela I* was not dismissed as a matter of form, determined that the plaintiff could not avail himself of the remedial benefit of § 52-592. Id., 202–203. An appeal to this court followed. Id., 203.

This court, in *Estela II*, noted that the trial court properly had considered the plaintiff's justifications for the discovery noncompliance that had led to the disciplinary dismissal in *Estela I* and had properly considered whether the plaintiff's conduct amounted to a matter of form in accordance with the analysis of our Supreme Court in *Ruddock* v. *Burrowes*, supra, 243 Conn. 575–76. *Estela* v. *Bristol Hospital, Inc.*, supra, 179 Conn. App. 215. After conducting a thorough analysis of the evidence presented to the trial court in connection with the defendant's motion for summary judgment in *Estela II*, this court agreed with the trial court that § 52-592 did not apply because the plaintiff failed to demonstrate that the noncompliance at issue in *Estela I* was the result of mistake, inadvertence, or excusable neglect.[14] Id., 218. As was the case in *Estela II*, in the present case, the disciplinary dismissal followed the plaintiff's repeated failures to comply with the court's

discovery orders and, at least to the extent that it was based on the strategic decision of the plaintiff's counsel not to disclose an expert as a cost saving measure, was purposeful in nature.

We are mindful of the difficulties that the plaintiff experienced in her attempts to comply with discovery in *Kuselias I*, but there is an element of lackadaisical behavior with respect to the need to either comply with orders or to promptly seek an extension of time once it becomes apparent that compliance is impossible. See, e.g., *Gillum* v. *Yale University*, 62 Conn. App. 775, 783, 787, 773 A.2d 986 (concluding that § 52-592 (a) did not apply and describing conduct in first case as " 'lackadaisical behavior by the plaintiffs at every turn' "), cert. denied, 256 Conn. 929, 776 A.2d 1146 (2001).

In light of the foregoing, we conclude that the court correctly examined the evidence before it and correctly determined that a genuine issue of material fact did not exist with respect to whether the conduct that led to the judgment of nonsuit in *Kuselias I* was a matter of form. Accordingly, we conclude that the court properly rendered summary judgment in favor of the defendants because the plaintiff was unable to demonstrate that she was entitled to the remedial benefit of the accidental failure of suit statute.[15]

II

Next, the plaintiff claims that the court erred in denying her motion to reargue and reconsider its ruling on the motion for summary judgment. We are not persuaded.

As stated previously in this opinion, after the court rendered summary judgment in favor of the defendants with respect to all three counts of the plaintiff's complaint, the plaintiff filed a motion to reargue and reconsider pursuant to Practice Book § 11-11. The plaintiff argued that the court had misapprehended the facts and misapplied the law. Specifically, the plaintiff argued that "[t]he court failed to apprehend or address the facts establishing that the plaintiff in fact cooperated fully in discovery in the underlying action. She was deposed, provided all requested documents, and responded to interrogatories. These facts alone establish a genuine issue of material fact sufficient to deny the motion for summary judgment."

In connection with the motion to reargue and reconsider, the plaintiff submitted the affidavit of Votre, the attorney who represented her in *Kuselias I* and *Kuselias II*. In his seven page affidavit, which sets forth fifty-four separate averments, Votre stated that the plaintiff "in fact substantially complied" with the discovery requests made by the defendants in *Kuselias I* but that the defendants had "twisted the facts before this court" to demonstrate otherwise. The plaintiff also submitted what is captioned as an "amended and corrected affida-

vit . . . in support of motion to reargue." In the plaintiff's affidavit, which is eleven pages long and sets forth seventy-three separately numbered averments, the plaintiff stated that she had "in fact substantially complied, if not completely complied, with the discovery requests in [*Kuselias I*]. The defendants' arguments twisted the facts before this court . . . ." She also averred that she had "produced in an organized manner nearly 6000 pages of documents in full compliance with the defendants' production requests long before any nonsuit was entered." The plaintiff also averred that, on December 14 and 29, 2020, she had responded to the defendants' second set of interrogatories, which was nearly a duplicate of the first set of interrogatories that had been submitted to her.

The defendants objected to the plaintiff's motion on several grounds, including that (1) the plaintiff's contentions were "blatantly false" and the record plainly revealed that the plaintiff had ignored all deadlines and discovery orders until after the judgment of nonsuit had been rendered against her in October, 2020, (2) the motion was an improper attempt by the plaintiff to obtain " 'a second bite at the apple,' " and (3) that the motion left unchallenged the court's reliance on the fact that the plaintiff failed to disclose an expert. The defendants argued that the motion should be denied because the plaintiff had failed to set forth any error made by the court or any controlling legal principle that it had overlooked in granting the motion for summary judgment.

Thereafter, the plaintiff filed a reply to the defendants' objection. At this juncture, the plaintiff argued that the record did not reflect that the court, in rendering a judgment of nonsuit, relied on the fact that the plaintiff had failed to disclose an expert. The plaintiff argued that "expert disclosure has nothing to do with the status of this case and . . . the court was misled by the defendants [when it granted the motion for summary judgment]." By order dated October 11, 2022, the court summarily denied the motion to reargue and reconsider.

"The standard of review regarding challenges to a court's ruling on a motion for reconsideration is abuse of discretion. As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did." (Internal quotation marks omitted.) *Fain* v. *Benak*, 205 Conn. App. 734, 746, 258 A.3d 112 (2021), appeal dismissed, 345 Conn. 912, 283 A.3d 980 (2022).

Even though the plaintiff captioned her motion as a "motion to reconsider" that was brought pursuant to Practice Book § 11-11, in the very first paragraph of the motion the plaintiff states that she "moves for *reconsideration* and *reargument* pursuant to Practice Book

§ 11-11." (Emphasis added.) This court has observed that "[m]otions for reargument and motions for reconsideration are nearly identical in purpose. [T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . A reconsideration implies reexamination and possibly a different decision by the [court] which initially decided it. . . . While a modification hearing entails the presentation of evidence of a substantial change in circumstances, a reconsideration hearing involves consideration of the trial evidence in light of outside factors such as new law, a miscalculation or a misapplication of the law. . . . [Reargument] may be used to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, 205 Conn. App. 46, 74–75, 256 A.3d 684, cert. denied, 339 Conn. 909, 261 A.3d 744 (2021).

The plaintiff's motion to reargue and reconsider is the quintessential example of a party seeking the proverbial second bite of the apple. The record reflects that the plaintiff has not used the motion for one of the proper purposes discussed previously in this opinion. Rather, the plaintiff used the motion to reargue and reconsider to present a different argument than that on which she had consistently relied when opposing the motion for judgment of nonsuit in *Kuselias I*, when seeking to open the judgment of nonsuit in *Kuselias I*, and in opposing the motion for summary judgment in *Kuselias II*. Moreover, in connection with the motion to reargue and reconsider, the plaintiff submitted evidence that contradicted the evidence on which she had relied previously, particularly in opposing the defendants' motion for summary judgment.[16] The nature of the new evidence the plaintiff presented, which unquestionably pertained to events that predated the judgment of nonsuit, compels the conclusion that it cannot be considered newly discovered. Under our rules of practice, the time to submit relevant evidence in connection with a motion in support of or in opposition to a motion for summary judgment is before the motion is heard, not following an adverse ruling on the motion; Practice Book § 17-45; and, unless a proper showing has been made that the evidence could not have been discovered by the exercise of due diligence, a court acts well within its discretion to refuse to consider untimely evidence in this regard. See, e.g., *Durkin Village Plainville, LLC*

v. *Cunningham*, 97 Conn. App. 640, 656, 905 A.2d 1256 (2006). For these reasons, we conclude that the plaintiff is unable to demonstrate that the court has abused its discretion in denying her motion to reargue and reconsider.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The alleged fraudulent conduct was related to the efforts of the plaintiff's former husband to conceal various types of information related to matters including his assets, employment, and earning capacity.

[2] "In *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 269–70, 540 A.2d 713 (1988), this court held that, in considering a motion to open on the basis of fraud, a court must first make a preliminary determination of whether there is probable cause to believe that the judgment was obtained by fraud. *Oneglia* and its progeny are grounded in the principle of the finality of judgments. . . . [T]he finality of judgments principle recognizes the interest of the public as well as that of the parties [that] there be fixed a time after the expiration of which the controversy is to be regarded as settled and the parties freed of obligations to act further by virtue of having been summoned into or having appeared in the case. . . . Without such a rule, no judgment could be relied on. . . . *Oneglia* carefully balanced that interest in finality with the reality that in some situations, the principle of protection of the finality of judgments must give way to the principle of fairness and equity. . . . The court in *Oneglia* thus ratified the gatekeeping mechanism employed by the trial court, whereby a court presented with a motion to open by a party alleging fraud in a postjudgment dissolution proceeding conducts a preliminary hearing to determine whether the allegations are substantiated. . . . [I]f the plaintiff was able to substantiate her allegations of fraud beyond mere suspicion, then the court [properly] would open the judgment for the limited purpose of discovery, and would later issue an ultimate decision on the motion to open after discovery had been completed and another hearing held. . . . This preliminary hearing is not intended to be a full scale trial on the merits of the [moving party's] claim. The [moving party] does not have to establish that he [or she] will prevail, only that there is probable cause to sustain the validity of the claim." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Karen* v. *Loftus*, 210 Conn. App. 289, 297–98, 270 A.3d 126 (2022).

[3] Specifically, the plaintiff alleged that the defendants failed to verify her former husband's actual income, his bonuses, his employment records, the value of his legal claims against his former employer, his tax returns, copies of his mortgage applications, his past and current bank records, and records regarding his pensions, his saving plans, and his hidden assets.

[4] The executive order provides in relevant part: "I hereby suspend, for the duration of this [COVID-19] public health and civil preparedness emergency, unless earlier modified or terminated by me, all statutory . . . (3) time requirements or deadlines related to the Supreme, Appellate, and Superior courts . . . ." (Citations omitted.) Executive Order No. 7G (March 19, 2020).

[5] In this opinion, we will refer to the present action as *Kuselias II*.

[6] In their motion for summary judgment, the defendants also argued that they were entitled to summary judgment as a matter of law with respect to the breach of contract cause of action as alleged in count two of the plaintiff's complaint "because there exists no issue of fact that the defendants did not breach an agreement to achieve a particular outcome." The court agreed with this argument. Because the plaintiff does not challenge that ruling in this appeal, we need not address the propriety of that ruling and, therefore, we will confine our analysis to the court's disposition of counts one and three of the complaint.

[7] We note that, in their memorandum of law in support of their motion for summary judgment, the defendants also argued that the undisputed facts demonstrated that the plaintiff was unable to rely on the executive order that was issued by Governor Lamont on March 19, 2020. The executive order, among other things, suspended certain statutes of limitations during the COVID-19 pandemic. See footnote 4 of this opinion. The defendants argued that it was undisputed that the plaintiff terminated their representation of her no later than May 7, 2016. By virtue of the applicable statutes of limitations, the plaintiff thus had to have commenced the present cause of action on or before May 7, 2019. The defendants argued that, as a matter of law, the executive order, which did not come into existence until after

the tolling of the applicable statutes of limitations, could not be applied to save the untimely claims. In the plaintiff's opposition to the defendant's motion for summary judgment, she did not dispute the defendants' argument. In the court's memorandum of decision granting the defendants' motion for summary judgment, it concluded that the executive order on which the plaintiff had relied as a special defense was "wholly irrelevant to the issues presently before the court." Because the plaintiff does not challenge that aspect of the court's decision in this appeal, we need not address the propriety of that ruling.

[8] The court's order, dated February 10, 2020, stated: "Compliance via written discovery and disclosure of the plaintiff's expert is ordered on or before [March 16, 2020]. If the moving party does not receive compliance by that date, the moving party may file a motion for judgment of nonsuit referring to this order. Absent proof of compliance on file before the motion appears on this short calendar, the motion will be granted by the court and judgment will enter."

[9] General Statutes § 52-212 (a) provides in relevant part: "Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which the notice of judgment or decree was sent, and the case reinstated on the docket . . . upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause . . . that the plaintiff or defendant was prevented by mistake, accident, or other reasonable cause from prosecuting the action or making the defense."

[10] The plaintiff takes issue with the court's reliance on the fact that, in *Kuselias I*, the plaintiff did not disclose an expert. Specifically, the plaintiff asserts that in neither the motion for judgment of nonsuit nor the motion for summary judgment did the defendants raise that issue. This argument is not persuasive.

Regardless of whether the defendants moved for a judgment of nonsuit on the ground that the discovery violations included the plaintiff's failure to disclose an expert, the fact remains that this was a topic of the hearing on the motion and it cannot be disputed that it was one of the grounds on which the court relied in rendering the judgment of nonsuit. Moreover, in the defendants' memorandum of law in support of their motion for summary judgment, the defendants repeatedly relied on this ground.

[11] The plaintiff averred that she "had a very difficult time during this process and [her] attorney did not understand how to help [her]." The plaintiff recalled that she attempted to "get through the documentation . . . in short spurts," and she "tried very hard to sort through the information as fast as possible," and that the feelings of trauma "ultimately disrupted [her] ability to review the files."

[12] In her affidavit, the plaintiff stated that, at the time that she executed the affidavit on May 14, 2022, she was receiving treatment for "the situational trauma" related to the agreement that Zingaro had negotiated on her behalf. She also averred that she had begun a new job on April 11, 2022, and that the new employment offered her "greater flexibility, allowing [her] the opportunity to address this situation in a timely manner here forward." Thus, the plaintiff asserted that she was now "ready" to prosecute the action.

[13] In her brief to this court, the plaintiff argues that "[t]he court ignored all of the actions taken successfully to comply with discovery." The plaintiff also asserts that the court did not properly analyze the severity of the conduct giving rise to the disciplinary dismissal in *Kuselias I* and that the court "ignored [her] submissions." These bald assertions are belied by even a cursory reading of the court's thorough and well researched decision. The decision reflects that the court carefully evaluated the averments in the plaintiff's affidavit along with the other evidence properly before it at the time that it considered the motion for summary judgment. Moreover, the record plainly reflects that the court did not summarily conclude that the disciplinary dismissal in *Kuselias I* precluded the plaintiff from relying on § 52-592 but, rather, that the court properly analyzed the nature of the conduct that led to the disciplinary dismissal in order to determine if a genuine issue of material fact existed as to whether it could be considered a matter of form.

[14] Following an appeal in *Estela II*, this court reasoned that "[t]he record readily supports the court's factual findings underlying its determination that the dismissal of *Estela I* did not occur in circumstances such as 'mistake, inadvertence or excusable neglect.' In *Estela I*, the plaintiff engaged in a pattern of delayed conduct by responding late to discovery requests, filing untimely objections, and filing notices of compliance after the filing of the

defendant's motion for a judgment of nonsuit. The plaintiff failed to comply with two court orders, which ordered him to comply with outstanding discovery requests for his 2002–2004 tax returns and his expert report, by February 29, 2013, and March 29, 2013, respectively.

"As justification for his noncompliance, the plaintiff represented to the court that he could not comply with the defendant's request to provide the expert report absent information from the defendant that had not yet been provided. As the court noted, however, the plaintiff failed to explain why he did not file a motion for extension of time in *Estela I* while waiting for this purportedly essential information from the defendant. The plaintiff also asserted that he could not comply with the discovery request for his 2002–2004 tax returns because he did not have copies, and he was waiting on copies to be provided by the Internal Revenue Service. The request for the tax returns, however, was not sent to the Internal Revenue Service until November 5, 2013—several days after the court in *Estela I* rendered the judgment of nonsuit on October 28, 2013, and months after the court-ordered deadlines to comply. Further, as the court noted, the plaintiff could have provided the defendant with an authorization to contact the Internal Revenue Service itself, but failed to do so. Moreover, the plaintiff even admitted in his motion to open the judgment of nonsuit in *Estela I* that he 'purposefully held off on continuing his review and analysis of his own documents to cull out relevant information because he expected that the request[ed] patient information would be produced by the defendant' . . . further undercutting any argument that the nonsuit resulted from 'mistake, inadvertence or excusable neglect.'

"Also as justification for his conduct in *Estela I*, the plaintiff argued that he complied with the 'reasonable meaning' of the court's orders. Specifically, the plaintiff represented to the court . . . that the parties had come to an agreement amongst themselves to extend the deadline for compliance. 'In Connecticut, [however] the general rule is that a court order must be followed until it has been modified or successfully challenged. . . . Our Supreme Court repeatedly has advised parties against engaging in self-help and has stressed that an order of the court must be obeyed until it has been modified or successfully challenged.' . . . *Worth* v. *Commissioner of Transportation*, 135 Conn. App. 506, 520–21, 523, 43 A.3d 199 (rejecting plaintiff's claim that failure to comply with court order was 'excusable neglect' and affirming trial court's finding that plaintiff's case was not saved by § 52-592), cert. denied, 305 Conn. 919, 47 A.3d 389 (2012). Thus, even if the parties had come to an agreement between themselves to extend the discovery deadline, the plaintiff needed to first inform the court of the agreement and have the court orders modified. The plaintiff failed to do so." (Emphasis omitted; footnotes omitted.) *Estela* v. *Bristol Hospital, Inc.*, supra, 179 Conn. App. 216–18.

[15] As part of her appellate argument in connection with this claim, the plaintiff urges us to consider the facts set forth in her "amended and corrected affidavit" and an affidavit from her attorney that were submitted in connection with her motion to reargue and reconsider. For the reasons articulated in part II of this opinion, we do not consider these submissions that were not before the trial court at the time that it rendered summary judgment in favor of the defendants. Setting aside these untimely submissions, there was no evidence before the court that a genuine issue of material fact existed with respect to whether the plaintiff had complied with the outstanding discovery requests before the court rendered a judgment of nonsuit in *Kuselias I*. It bears repeating that the evidence before the court at the time that it rendered summary judgment reflected that, at the time that the court rendered the judgment of nonsuit, noncompliance had occurred, and the plaintiff and her attorney were attempting, at that time, to characterize the conduct giving rise to the noncompliance as a matter of form.

[16] As we previously discussed in this opinion, the court had unambiguous evidence before it concerning the fact that the plaintiff had failed to comply with its discovery orders. The plaintiff's affidavit was replete with her explanation for why she had been unable to comply with these orders. The plaintiff's counsel, for his part, did not disagree that an expert had not been disclosed but, instead, explained why, even at the time of the hearing on the motion for judgment of nonsuit, the plaintiff had not disclosed an expert.